# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA KAY MILLS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:17-cv-01091-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 20) |

## I.

## INTRODUCTION

Plaintiff Debra Kay Mills ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from fibromyalgia, chronic obstructive pulmonary disease, ulcerative colitis, irritable bowel syndrome, and affective disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied and Defendant's cross-motion for summary

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 10.)

1

judgment shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 19, 2013. (AR 104.) Plaintiff's application was initially denied on March 27, 2014, and denied upon reconsideration on July 21, 2014. (AR 105-107, 112-116.) Plaintiff requested and received a hearing before Administrative Law Judge E. Alis ("the ALJ"). Plaintiff appeared for a hearing on November 25, 2015. (AR 33-71.) On March 22, 2016, the ALJ found that Plaintiff was not disabled. (AR 16-28.) The Appeals Council denied Plaintiff's request for review on July 3, 2017. (AR 1-3.)

### A. ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2018.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 15, 2013.

- Plaintiff has the following severe impairments: fibromyalgia and an affective disorder.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with lifting/carrying/pushing/pulling of 25 pounds frequently and 50 pounds occasionally; sitting standing or walking for 6 hours each in an 8 hour day; no concentrated exposure to fumes, odors, dust, or gases; no work in a work setting with poor ventilation; and a limitation to work involving simple routine repetitive tasks; simple work-related decisions; and occasional contact with the public and coworkers.

- Plaintiff is capable of performing her past relevant work as a delicatessen worker. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

1. - Plaintiff has not been under a disability as defined in the Social Security Act from May 15, 2013, through the date of this decision.

(AR 21-28.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**B.   Relevant Medical Record**

On May 28, 2013, Plaintiff complained of blood in her stool the prior day and vomiting. (AR 299.) Plaintiff was seen by physicians' assistant Travis Wolf, who noted that she probably had diverticulitis and internal hemorrhoids were possible. (AR 280-281.) A bland diet was recommended and fiber content was to be increased. (AR 281.) Plaintiff had lower left quadrant pain to palpation and an otherwise unremarkable physical examination. (AR 299.)

Plaintiff was seen by Dr. Dutter on August 19, 2013, and she was referred to a GI for a colonoscopy. (AR 278-279.) Plaintiff complained of rectal bleeding and dizziness. (AR 296.) Plaintiff had an unremarkable physical examination. (AR 297.)

Plaintiff was examined by a gastroenterologist, Dr. Elsakr, on August 21, 2013. (AR 264-267.) Plaintiff was alert and oriented, in no acute distress and is noted to be friendly. (AR 266.) Plaintiff's physical examination was unremarkable and she was to return for a colonoscopy. (AR 266.)

Plaintiff was seen by Dr. Dutter on September 23, 2013. (AR 276-277.) Plaintiff reported more crying spells and only being comfortable when she was home. (AR 294.) She requested an inhaler for her COPD. (AR 294.) Physical examination was unremarkable other than decreased breath sounds. (AR 295.)

On October 1, 2013, Plaintiff had a colonoscopy. (AR 259.) Physical examination was unremarkable. (AR 261-262.) Impressions of the colonoscopy note "grade 1 internal hemorrhoids; normal mucosa in the cecum ascending colon transverse colon descending colon sigmoid colon and rectum." (AR 262.) Biopsies were taken from right colon, left colon and rectum to rule out Dysplasia. (AR 262.) Polyp 4 mm to 3 mm with central depression which raises the possibility of malignant polyp in the proximal transverse colon; 2 Polyps 2 mm to 2 mm in the terminal ileum; S/P tattooing in the transverse colon polyp site; and 1 Polyp 4 mm to 4 mm in the sigmoid colon. (AR 262.) A pathology report issued finding "[r]eview of the right and left colon and rectal biopsies shows portions of colonic and colorectal mucosa with overall intact architecture. There is no evidence of chronic mucosal damage acute cryptitis crypt abscess basal plasmacytosis or granulomas. No dysplasia or malignancy is identified." (AR 250.)

On October 22, 2013, Plaintiff was seen by Dr. Elsakr for a follow-up for abdominal pain. (AR 254-256, 282-283.) Plaintiff was alert and oriented, in no acute distress and is noted to be friendly. (AR 256.) Plaintiff had an unremarkable physical examination. (AR 256.)

Plaintiff saw Dr. Dutter on October 28, 2013 for a medication follow-up. (AR 275, 292.) Plaintiff had not taken her medication for three to four days. (AR 292.) She reported that she did not want to leave the house but the Tudorza was helpful for her breathing. (AR 292.) Plaintiff had an unremarkable physical examination other than mild decreased breath sounds. (AR 293.)

Plaintiff saw Dr. Dutter on December 12, 2013 for a follow-up for depression and reported that her depression seemed to be getting worse. (AR 290.) Other than some decreased breath sounds, Plaintiff had an unremarkable physical examination and her medications were changed. (AR 291.)

On March 9, 2014, Plaintiff had a pulmonary function test which showed no evidence of

obstructive disease. (AR 320.)

Plaintiff saw Dr. Dutter on May 5, 2014, for medication review and complained of pain in her left nipple, pain with burning on the bottoms of both feet and possible numbness, and had not been taking her medication. (AR 322.) Plaintiff had an unremarkable physical examination other than some diffuse abdominal tenderness. (AR 323.) Plaintiff was to take 2 Aleve tablets twice a day for her fibromyalgia. (AR 323.) On May 12, 2014, the record notes that Plaintiff's labs were basically normal other than an elevated CRP which just indicates some type of inflammation in her body, maybe related to arthritis or fibromyalgia. (AR 328.)

On June 18, 2014, Plaintiff had a screening mammogram which showed mild to moderate fibroglandular tissue with scattered fatty replacement with a few coarse calcifications that were unchanged since the prior examination. (AR 369.)

Plaintiff was seen on July 30, 2014, for a flare-up of her fibromyalgia. (AR 359.) She complained of increasing pain in her left shoulder and a burning sensation in her neck and the bottom of her feet. (AR 359.) She was taking Aleve for the pain, and tried her husband's Norco which helped the pain but it made her sick. (AR 359.) Plaintiff had an unremarkable physical examination. (AR 360.)

On February 2, 2015, Plaintiff saw Dr. Dutter complaining of fibromyalgia pain for which she was taking Aleve and Advil. (AR 356.) Plaintiff reported that the symptoms were mostly in her neck, shoulders and arms. (AR 356.) The symptoms started one week prior to the appointment after she cleaned her house. (AR 356.) Plaintiff had moderate spasm in the trapezius muscle, with the left greater than the right, and an otherwise unremarkable examination. (AR 357.)

On March 11, 2015, Plaintiff saw Dr. Dutter to have disability paperwork completed. (AR 353.) She complained of fibromyalgia and chronic pain in her hands, elbows, shoulders, neck/back, hips, knees and feet. (AR 353.) She also reported severe bouts of diarrhea intermittently with blood present. (AR 353.) She reported that she is essentially bedridden frequently due to her polyarthralgias. (AR 353.) Examination showed swelling in the IP joints on both hands and trace pedal edema. (AR 354.) Physical examination was otherwise

unremarkable. (AR 354.)

On this same date, Dr. Dutter completed a physical functional capacity questionnaire. (AR 343-346.) He stated that he sees Plaintiff one to two times per year and she has been diagnosed with fibromyalgia, chronic pain, and inflammatory bowel disease. (AR 343.) Her symptoms are chronic diffuse pain and diarrhea/blood. (AR 343.) She has moderate diffuse pain in her joints that worsen when she lifts but are present continuously. (AR 343.) The clinical findings and objective signs are swelling of joints in her hands and difficulty sleeping. (AR 343.) She takes medication which causes sedation. (AR 343.) Plaintiff is not a malingerer and has no emotional factors that contribute to the severity of her symptoms and functional limitations. (AR 344.) Plaintiff has depression. (AR 344.) Plaintiff would constantly experience symptoms severe enough to interfere with concentration and attention needed to perform even simple tasks during a typical workday. (AR 344.) Plaintiff is incapable of even low stress jobs because stress increases her GI symptoms. (AR 344.) Plaintiff is able to walk less than one city block, can sit 30 minutes and stand 5 minutes at a time. (AR 344.) Plaintiff can sit and stand/walk less than two hours in an eight-hour workday. (AR 345.) Plaintiff must walk every fifteen minutes for two minutes during an eight-hour workday. (AR 345.) Plaintiff requires a job that permits shifting at will from sitting, standing, or walking. (AR 345.) Plaintiff requires unscheduled breaks but it is unknown how often or for how long they would be required. (AR 345.) Plaintiff must sit with her legs at waist level for 75 percent of an 8 hour workday. (AR 345.) Plaintiff can rarely lift less than 10 pounds and never lift 10 pounds or more. (AR 345.) Plaintiff can rarely look down, turn her head to the left or right or look up, and can occasionally hold her head in a static position. (AR 345.) Plaintiff can rarely twist, and can never stoop/bend, crouch/squat, climb ladders or climb stairs. (AR 346.) Plaintiff can grasp, turn, or twist objects and do fine manipulations bilaterally twenty-five percent of the time and can reach, including overhead, ten percent of the time. (AR 346.) Plaintiff would miss more than four days per month due to her impairments or treatment. (AR 346.) Plaintiff also has shortness of breath. (AR 346.)

Plaintiff was seen by Dr. Dutter on September 16, 2015 for a rash. (AR 350.) Plaintiff

had an unremarkable examination other than eczematous area on her upper back. (AR 351.)

On December 15, 2015, Plaintiff had a neurologic consultation performed by Dr. Sharma. (AR 371-377.) Dr. Sharma noted tenderness to palpation in the cervical spine and paravertebral region. (AR 374.) Plaintiff had full range of motion in the cervical spine and no muscle spasms were noted. (AR 374.) Plaintiff had scattered rales, decreased air entry bilaterally, and expiratory phase was prolonged. (AR 374.) Plaintiff had tenderness to palpation of the thoracic, lumbar spine and para vertebral region. (AR 374.) She had full range of motion of the thoracic lumbar spine. (AR 374.) Straight-leg raising was negative, and there was no muscle spasm noted. (AR 374.) Tender points were noted in the supraspinatus region, upper arms, forearm, elbows, thighs, and knees. (AR 374.)

Plaintiff had full range of motion of the right and left shoulders with abduction of 180 degrees, flexion of 180 degrees, internal rotation of 60 degrees, and external rotation of 80 degrees. (AR 374.) Range of motion of the elbows was normal bilaterally, and there was full range of motion of the wrists and all the fingers. (AR 375.) There was no evidence of arthritic swelling or tenderness in these areas. (AR 375.)

Plaintiff had full range of motion in the right and left hips. (AR 375.) The knees were stable in the mediolateral and anteroposterior directions. (AR 375.) Plaintiff had full range of motion in the ankles, all toes, and subtalar joints with no evidence of deformity, swelling, or tenderness in these areas. (AR 375.)

Neurologic examination was normal. (AR 375.) Plaintiff had normal bulk and muscle tone throughout with 5/5 strength in all muscle groups of the upper and lower extremities. (AR 375.) Plaintiff had good coordination in fine motor movements of the fingers bilaterally. (AR 376.) Plaintiff's gait was within normal limits. (AR 376.) She was able to walk on her heels, toes, and perform tandem gait. (AR 376.) Romberg was negative. (AR 376.)

Dr. Sharma opined that Plaintiff could occasionally lift and carry 50 pounds and frequently lift and carry 20 pounds; and stand and walk 6 hours without interruption in an 8-hour workday. (AR 379.) Plaintiff had no limitation on the use of her hands or feet and no postural limitations. (AR 380-381.) Plaintiff had no environmental limitations. (AR 382.)

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons to reject the opinion of her treating physician. Plaintiff argues that the ALJ did not give a reason to reject the sit/stand option opined by Dr. Dutter. Plaintiff states that this is an uncontradicted opinion because the consultative examiner, Dr. Sharma, was not asked whether Plaintiff needed a sit/stand option.

Defendant filed a cross-motion for summary judgment arguing that the ALJ properly evaluated the opinion of Dr. Dutter. Defendant contends that the ALJ thoroughly reviewed the record and explained that Dr. Dutter's opinion was out of proportion to the objective findings, including those findings reported in his treatment records prior to, in the same month, and after the opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff argues that Dr. Dutter's opinion is uncontradicted because Dr. Sharma did not address a sit stand option. The Court rejects this argument because it is an unreasonable reading of Dr. Sharma's opinion. Dr. Sharma clearly found that Plaintiff had no sitting limitations and was able to stand and walk 6 hours in an 8-hour day, and had no hand or feet limitations. (AR 379.) The reasonable interpretation of the opinion is that there is no sit/stand limitation opined by Dr. Sharma because he did not find any such limitation. Since Dr. Dutter's opinion is contradicted by Dr. Sharma's opinion, the ALJ only needs to provide specific and legitimate reasons to reject his opinion.

The ALJ set forth the medical treatment Plaintiff had received as to each of her impairments that were found to be non-severe. (AR 22.) The ALJ also considered the treatment Plaintiff received for her fibromyalgia noting that Plaintiff's medical records show that she reported burning pain on the bottom of her feet with possible numbness and tingling on May 5, 2014. (AR 24, 322.) She was diagnosed with fibromyalgia based on an elevated CRP indicating some type of inflammation in her body. (AR 24, 328.)

On July 30, 2014, Plaintiff saw Dr. Dutter for a flare-up of fibromyalgia with increased pain in her left shoulder, frequent burning sensation in her neck, and severe burning on the bottoms of her feet. (AR 24, 359.) Physical examination on that date was unremarkable. (AR 24, 360.)

On February 2, 2015, Plaintiff complained of fibromyalgia pain and reported that the symptoms had started one week prior after she cleaned her house. (AR 356.) She was found to have moderate spasm in the trapezius muscles. (AR 357.)

On March 11, 2015, Plaintiff complained of fibromyalgia and chronic pain when requesting to have her disability paperwork completed. (AR 24, 353.) Dr. Dutter found swelling in the IP joints of both hands and trace pedal edema. (AR 24, 354.)

Plaintiff next saw Dr. Dutter on September 16, 2015 and reported no pain or swelling. (AR 25, 350.) Plaintiff had a normal physical examination other than findings of eczema. (AR 351.)

The ALJ found that the severe limitations opined by Dr. Dutter in the March 2015 were out of proportion to the objective findings reported in his treatment notes. (AR 26.) The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

Review of the medical record shows that the only objective findings prior to July 4, 2014, are decreased breath sounds and occasional abdominal tenderness. (AR 291, 293, 295, 299, 323.) Plaintiff had a colonoscopy that found hemorrhoids and polyps. (AR 250.) On March 9, 2014, a pulmonary function test found no evidence of obstructive disease. (AR 320.) On February 2, 2015, Dr. Dutter noted a moderate spasm in the trapezius muscle. (AR 357.) When next seen on March 11, 2015, Plaintiff had moderate swelling in the IP joints on both hands and pedal edema. (AR 354.) The ALJ found that these limited findings were inconsistent with the severe limitations opined by Dr. Dutter. This conclusion is reasonable based on the evidence in the medical record. The medical record demonstrates that prior to May 2104, Plaintiff did not complain of body pain. In February 2015, she reported that her symptoms had started one week prior to the visit. Finally, on the last visit with Dr. Dutter on September 16, 2015, Plaintiff did not report any pain or swelling. There were objective findings that could support the opinion only in February 2015 (moderate spasm in the trapezius muscle) and March 2015 (moderate swelling in both hands and pedal edema). There were no remarkable findings in September 2015.

The lack of objective medical evidence is a specific and legitimate reason to reject the opinion of Dr. Dutter. Since the ALJ provided a specific and legitimate reason to reject Dr. Dutter's opinion, the sit/stand option did not need to be included in the residual functional assessment.

Plaintiff complains that the ALJ does not explain why he found it reasonable to include a sit/stand option in the hypothetical presented to the vocational expert ("VE") at the time of the

hearing but did not address it in his opinion. At the hearing, the VE was presented with multiple hypotheticals regarding different limitations that were contained in the record. (AR 65-70.) The ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164–65 (9th Cir. 2001)).

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

Here, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with lifting/carrying/pushing/pulling of 25 pounds frequently and 50 pounds occasionally; sitting standing or walking for 6 hours each in an 8 hour day; no concentrated exposure to fumes odors dust or gases; no work in a work setting with poor ventilation; and a limitation to work involving simple routine repetitive tasks; simple work-related decisions; and occasional contact with the public and coworkers. (AR 24.) This is consistent with the opinion of Dr. Sharma who examined Plaintiff and opined that she was able to perform medium work. (AR 379-382.) This hypothetical was presented to the VE who opined that this individual could perform Plaintiff's past work as a delicatessen worker. (AR 65-66.)

The ALJ did not err in the weight provided to Dr. Dutter's opinion or by failing to include a sit/stand option in the residual functional capacity.

///

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinion of Dr. Dutter. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED and Defendant's cross-motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Debra Kay Mills. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **July 20, 2018**

_____
UNITED STATES MAGISTRATE JUDGE